948 F.2d 258
 120 Lab.Cas. P 10,987
 James C. JONES; Linda Jones, Plaintiffs-Appellants,
v.
TENNESSEE VALLEY AUTHORITY; Charles H. Dean; John B.
Waters, Jr.; Michael S. Kidd; Harrison Newt Culver;
Richard D. Smith; Joan T. Muecke; Kermit Whitt; William
F. Willis; Robert J. Mullin; Steven A. White; Nicholas C.
Kazanas; Unknown Employees of the Tennessee Valley
Authority, Defendants-Appellees.
 No. 90-5570.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 31, 1991.
Decided Oct. 31, 1991.
 
 David Stern, Lynne Bernabei (argued and briefed), Debra Katz (briefed), Bernabei & Katz, Washington, D.C., for plaintiffs-appellants.
 Justin M. Schwamm, Sr., Asst. Gen. Counsel, Thomas F. Fine, Sr. Litigation Atty., Brent R. Marquand (argued and briefed), Thomas A. Robins, Tennessee Valley Authority, Knoxville, Tenn., for defendants-appellees.
 Before KEITH and KRUPANSKY, Circuit Judges, and ENGEL, Senior Circuit Judge.
 KEITH, Circuit Judge.
 
 
 1
 Plaintiff-appellant James C. Jones ("plaintiff") appeals the district court's dismissal of his claims against defendants-appellees, Tennessee Valley Authority ("TVA") officials (collectively "defendants"), for violation of plaintiff's first and fifth amendment rights, violation of 42 U.S.C. § 1985(1) and intentional infliction of emotional distress. For the reasons stated below, we AFFIRM.
 
 I.
 A.
 
 2
 For the purpose of review, we accept plaintiff's allegations as true. According to plaintiff, from 1981 through September 1988, he was employed by TVA as a nuclear engineer. Plaintiff's status as a TVA employee was that of a preference eligible non-disabled veteran. Plaintiff was hired as a manager at the M-5 level on TVA's management schedule. From September 1981 until December 1984, plaintiff held the position of Nuclear Engineer and Quality Assurance Specialist on the Nuclear Safety Review Staff ("NSRS") of TVA, with the responsibility to conduct overall investigations, reviews, and appraisals of safety systems and safety activities at TVA's nuclear power plants.
 
 
 3
 From November 1981 until July 1983, plaintiff conducted reviews of the welding program at the Watts Bar nuclear plants, which was at that time preparing to meet licensing standards. Plaintiff identified serious safety problems, which prohibited immediate licensing of the plants. Among these safety violations were the use of unqualified welding inspectors, the failure of TVA's welding program to meet nuclear industry codes and the lack of required documentation for the plants' weld inspection program. Plaintiff also found that TVA management failed to resolve any of these safety problems after they were identified to management, in violation of Nuclear Regulatory Commission ("NRC") requirements.
 
 
 4
 Plaintiff reported these safety problems to his NSRS supervisors but his supervisors allegedly attempted to pressure plaintiff to suppress his safety findings through harassment and intimidation. Plaintiff alleges that his supervisors verbally abused and intimidated him by assigning him to menial tasks, singling him out for undeserved reprimands, and unfairly lowering his performance appraisal. Plaintiff purportedly requested that he be relieved of his welding responsibilities in order to escape the harassment, but his supervisors denied the request.
 
 
 5
 From June 1984 until November 1984, plaintiff participated in an overall review of procurement practices in TVA's nuclear program. Plaintiff identified serious deficiencies in TVA's procurement program at its Sequoyah and Browns Ferry facilities. Allegedly, in retaliation, plaintiff's supervisors escalated the harassment against plaintiff by unfairly reprimanding him, verbally abusing him, belittling his work, assigning him to work under an inexperienced engineer who lacked the proper qualifications to lead an audit, and monitoring and obstructing his work activities in a manner so as to discredit him. Plaintiff alleges that defendants' intentions were to pressure him to suppress his safety findings and certify that TVA's plants were safe for operation.
 
 
 6
 In November 1984, plaintiff left NSRS and transferred to a lower level, M-4 position in TVA's Chattanooga office. Plaintiff was no longer given substantive assignments in his area of expertise. On June 11, 1986, plaintiff and four other TVA engineers testified before the Subcommittee on Oversight and Investigations of the United States House of Representatives Committee on Energy and Commerce. They described, under oath, the serious welding and procurement problems in TVA's nuclear power program which they had identified and which demonstrated that TVA could not safely operate its nuclear reactors. After the hearing, TVA Director John B. Walters publicly ridiculed plaintiff and the other engineers for their testimony by calling them the "Fabulous Five."
 
 
 7
 Two months later, TVA managers relieved plaintiff of his welding and procurement responsibilities. TVA managers allegedly increased their surveillance of him in order to monitor his communications with the NRC and congressional investigators. Although TVA's General Manager, Willis, and TVA directors, Waters and Charles Dean, were informed of the harassment of plaintiff, they did nothing to stop it.
 
 
 8
 Plaintiff alleges that his Chattanooga supervisors unfairly lowered his performance appraisals in order to make him susceptible to being terminated in future work force reductions, and denied him promotions, bonuses and pay raises to which he was entitled. In addition, plaintiff alleges that the Chattanooga supervisors intentionally caused him emotional distress by attempting to obtain his confidential medical records.
 
 
 9
 Plaintiff further alleges that during the entire period from 1982 to the present, defendants pressured plaintiff to withdraw his safety findings, engaged in an unlawful conspiracy to discredit plaintiff within TVA and with the general public and attempted to damage plaintiff's professional reputation. Defendants also engaged in a campaign to silence plaintiff from speaking publicly about TVA's safety problems by removing him from his primary responsibilities, downgrading his performance appraisals and constantly monitoring his activities.
 
 
 10
 Plaintiff claims that as a result of this long pattern of harassment and intimidation, he suffered physical and emotional injury. Plaintiff was diagnosed in 1988 with post traumatic stress disorder, a permanent psychiatric injury which totally incapacitates him from working or enjoying many activities in which he could formerly engage.
 
 B.
 
 11
 On May 7, 1987, plaintiff filed a complaint in district court against TVA, six former and current TVA officials, and other unknown employees of TVA. The complaint alleged that defendants had harassed, intimidated and attempted to silence plaintiff, damaged his professional reputation and attempted to drive him from the federal service, in violation of the first and fifth amendments and 42 U.S.C. § 1985(1). Plaintiff also alleged that defendants had committed the tort of intentional infliction of emotional distress against him. Linda K. Jones, plaintiff's wife, alleged loss of sexual society, loss of services, companionship and affection as a result of the intimidation and harassment of her husband. On June 31, 1987, plaintiff filed an amended complaint which added the claim that defendants wiretapped or intercepted plaintiff's phone calls at work, in violation of the fourth amendment and 18 U.S.C. § 2510.
 
 
 12
 On August 10, 1987, defendants moved for dismissal for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment. In their motion, defendants asserted that plaintiff's claims based on events prior to May 7, 1986, were barred by limitations, that no judicial remedy for a constitutional violation could be implied, that the exclusive remedy provision of the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8116(c), barred plaintiff's claims for mental and physical injury and, finally, that there was no basis in fact for the wiretapping claim.
 
 
 13
 On January 22, 1988, the district court dismissed plaintiff's constitutional claims on the ground that it was inappropriate for the court to imply a Bivens[1] cause of action under the Constitution because plaintiff had comprehensive administrative remedies under the Energy Reorganization Act ("ERA") and the Civil Service Reform Act ("CSRA"). The district court also stayed plaintiff's claim for intentional infliction of emotional distress pending a determination by the Secretary of Labor as to whether plaintiff's claim was covered under the Federal Employees' Compensation Act ("FECA"). Finally, the district court denied dismissal of the wiretapping claim.
 
 
 14
 Both parties filed motions for reconsideration. On April 15, 1988, the district court held that FECA was not a bar to plaintiff's claim of intentional infliction of emotional distress because the injuries fell outside the scope of FECA. However, the district court otherwise denied both motions for reconsideration.
 
 
 15
 On June 6, 1988, the district court dismissed plaintiff's amended complaint alleging a conspiracy to violate plaintiff's civil rights under 42 U.S.C. § 1985(1). The district court held that the § 1985(1) claim merely re-alleged the Bivens constitutional claim which the district court had previously dismissed. Plaintiff filed a motion for reconsideration of the dismissal, arguing that § 1985(1), unlike other civil rights statutes, creates substantive rights and is not limited to providing a remedy for a constitutional violation. On July 15, 1988, the district court denied the motion for reconsideration, stating that § 1985 should not be extended to federal employer-employee relations for which adequate administrative remedies are available.
 
 
 16
 On September 2, 1988, defendants moved for dismissal or in the alternative for summary judgment on the remaining claims of intentional infliction of emotional distress and wiretapping. On October 14, 1988, the district court dismissed the claim of intentional infliction of emotional distress, holding that although the conduct alleged may have been tortious, it was not beyond the pale of decency. With respect to the wiretapping claim, the district court held that discovery was not complete and granted plaintiff additional time to respond. However, on March 16, 1990, the district court granted summary judgment in favor of defendants on the wiretapping claim, holding that plaintiff had failed to raise a genuine issue of fact that his telephone had ever been wiretapped by defendants. Plaintiff filed a timely notice of appeal.
 
 
 17
 Plaintiff has since retired from TVA. In July 1990, the Department of Labor's Office of Worker's Compensation Programs granted plaintiff's claim for FECA benefits because work related stresses caused plaintiff to be totally disabled from working in his position at TVA or in a comparable position.
 
 II.
 A.
 
 18
 Because the district court based its determination on facts beyond the pleadings, we will apply the summary judgment standard of review. See Rogers v. Stratton Industries, Inc., 798 F.2d 913 (6th Cir.1986). Whether the district court properly granted summary judgment in favor of defendants is a question of law subject to de novo review. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987). The moving party has the burden to conclusively show that no genuine issue of material fact exists. Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. denied, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979).
 
 
 19
 Because TVA is an agency of the federal government, see McNabb v. Tennessee Valley Authority, 754 F.Supp. 118, 120 (E.D.Tenn.1990), Jones was a federal employee during his tenure with TVA. CSRA is a comprehensive statutory scheme which governs the administrative and judicial review of adverse personnel actions against federal employees. See United States v. Fausto, 484 U.S. 439, 443, 108 S.Ct. 668, 671, 98 L.Ed.2d 830 (1988). Jones' status under CSRA was that of a preference eligible veteran employee in the excepted service. 5 U.S.C. § 2108(3); see also Fausto, 484 U.S. at 441 n. 1, 108 S.Ct. at 670 n. 1 ("The CSRA divides civil service employees into three main classifications that can be generally described as follows: 'Senior Executive Service' employees are those who occupy high-level positions in the Executive Department, but for whom appointment by the President and confirmation by the Senate is not required. 5 U.S.C. § 3132(a)(2). 'Competitive service' employees are all other employees for whom nomination by the President and confirmation by the Senate is not required, and who are not specifically excepted from the competitive service by statute or by statutory authorized regulation. § 2102. 'Excepted service' personnel are the remainder--those who are in neither the competitive service nor the Senior Executive Service. § 2103. Respondent's position was in the excepted service because it had been excluded from the competitive service by authorized Civil Service Commission (now Office of Personnel Management) regulation. 5 C.F.R. § 213.3102(hh) (1978) ... Within each of the three classifications of employment, the Act accords preferential treatment to certain veterans and their close relatives--so-called 'preference eligibles.' § 2108.")
 
 
 20
 Plaintiff argues that the district court erred in dismissing his Bivens cause of action requesting the court to imply a cause of action directly under the first amendment of the United States Constitution and finding that plaintiff had administrative remedies under both the ERA and the CSRA. Defendants counter that the district court correctly determined that plaintiff had comprehensive administrative remedies available under both the ERA and the CSRA to challenge the conduct complained of and that it would therefore be inappropriate for the district court to provide Bivens remedies in this instance. We find defendants' argument persuasive.
 
 
 21
 In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court established that victims of a constitutional violation committed by a federal agent may recover damages against a federal official despite the absence of a statute conferring the right to recover damages. While Bivens doctrine has been greatly expanded, a Bivens cause of action will not be implied if the defendant shows either "special factors counselling hesitation in the absence of affirmative action by Congress," Bivens, 403 U.S. at 396, 91 S.Ct. at 2005, or that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the constitution and viewed as equally effective. Id. at 397, 91 S.Ct. at 2005.
 
 
 22
 In Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Supreme Court held that it would be inappropriate to supplement the regulatory scheme with new judicial remedies when a federal employee asserts a work-related claim that is governed by comprehensive provisions which afford the employee meaningful remedies against the United States. 462 U.S. at 368, 103 S.Ct. at 2406. The plaintiff in Bush was an engineer who worked for the National Aeronautics and Space Administration ("NASA"). After the plaintiff made several statements to the news media regarding the agency's waste of taxpayers' money, he was demoted. He claimed that his constitutional rights were violated and his civil service administrative remedies were not sufficient to redress the wrongs he allegedly suffered.
 
 
 23
 In declining to fashion a judicial remedy for the injuries complained of by the plaintiff, the Supreme Court stated that:When Congress provides an alternative remedy, it may, of course, indicate its intent, by statutory language, by clear legislative history, or perhaps even by the statutory remedy itself, that the courts' power should not be exercised. In the absence of such a congressional directive, the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.
 
 
 24
 Id. at 378, 103 S.Ct. at 2411. The Supreme Court further stated that the question is whether a federal employee's attempt to recover damages from his superior for violation of constitutional rights involves any special factors counselling hesitation. The Bush Court characterized the issue as one of "federal personnel policy" cognizable under CSRA. In Bush the special factors counselling hesitation in the creation of a new remedy in a case involving federal personnel policy were found to be related to the question of who should decide whether such a remedy should be provided. Id. at 380, 103 S.Ct. at 2412-13. The Court declined "to create a new substantive legal liability without legislative aid" because Congress is in a better position to decide whether or not the public interest would be served by creating a new substantive legal liability. Id. at 390, 103 S.Ct. at 2417-18.
 
 
 25
 More recently, in Schweiker v. Chilicky, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), the Supreme Court considered whether Bivens remedies were available for alleged due process violations in the denial of social security benefits. In addressing this question, the Court noted that in each case where Bivens actions for money damages against federal officers have been permitted, the Court found that there were no " 'special factors counselling hesitation in the absence of affirmative action by Congress,' no explicit statutory prohibition against the relief sought, and no exclusive statutory alternative remedy." Id. at 421, 108 S.Ct. at 2466-67 (citations omitted). The Court also noted that it had extended Bivens to new contexts cautiously. Id. The Court has not created additional Bivens remedies where the design of a government program suggests that Congress provided what it considered adequate remedial mechanisms for constitutional violations that may occur in the course of its administration. Id. at 423, 108 S.Ct. at 2467-68. The Court found that congressional competence at balancing the considerations of governmental efficiency and the rights of individuals was no more questionable in the social welfare context than in the civil service context presented in Bush. Id. at 425, 108 S.Ct. at 2468-69. Thus, "the concept of 'special factors counselling hesitation in the absence of affirmative action by Congress' has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent." Id. at 423, 108 S.Ct. at 2468.
 
 
 26
 In Schweiker, the Court applied the reasoning in Bush which led it to decline to create a new substantive legal liability because it determined that Congress was in a better position to do so. The Court found that Congress was the body charged with making the inevitable compromises required in the design of a massive and complex welfare benefits program and that Congress had addressed the problems created by state agencies' wrongful termination of disability benefits. In comparing Bush to the context of the case before it, the Court emphasized that in neither case did the presence of alleged unconstitutional conduct that was not separately remedied under the statutory scheme imply that the statute has provided no remedy for the constitutional wrong at issue. Moreover, in neither case, in light of the comprehensive statutory scheme involved, could the harm resulting from the alleged constitutional violation be separated from the harm resulting from the denial of the statutory right. Id. at 427-28, 108 S.Ct. at 2469-70. Thus, the Court held that there was no legal basis that would allow it to revise Congress' decision and dismissed the case. Id. at 429, 108 S.Ct. at 2470-71.
 
 
 27
 Applied to the instant case, Bush and Schweiker demonstrate that courts must give appropriate deference to indications that congressional inaction has not been inadvertent and should not create Bivens remedies when the design of a government program suggests that Congress has provided what it considers to be adequate remedies for constitutional violations. Congress is in the best position to balance governmental efficiency and individual rights. Plaintiff in the instant case concedes that since Chilicky most courts of appeals which have considered the question have declined to imply a Bivens action in the context of federal employment. Plaintiff has recourse primarily through the CSRA and also the ERA.
 
 
 28
 Since Schweiker, courts in several instances have limited their inquiry to whether Congress has enacted a comprehensive administrative scheme governing the area involved, which indicates that Congress' failure to provide a damages remedy for constitutional violations was deliberate rather than inadvertent. See McIntosh v. Turner, 861 F.2d 524, 526 (8th Cir.1988); Kotarski v. Cooper, 866 F.2d 311, 312 (9th Cir.1989); Brothers v. Custis, 886 F.2d 1282, 1284 (10th Cir.1989); Hill v. Department of Air Force, 884 F.2d 1321 (10th Cir.1989). Thus, the "special factors" analysis does not require a foray into the meaningfulness of federal employees' remedies under the CSRA. See Feit v. Ward, 886 F.2d 848, 854-55 (7th Cir.1989). The focus is on the comprehensive nature of the administrative system protecting the rights of the plaintiff, as well as Congress' expertise and authority in the field in question.
 
 
 29
 In the field of federal employment, even if no remedy at all has been provided by the CSRA, courts will not create a Bivens remedy. See Lombardi v. Small Business Admin., 889 F.2d 959, 961 (10th Cir.1989); see also Moreno v. Small Business Assoc., 877 F.2d 715, 716 (8th Cir.1989) (dismissing as a matter of law a federal employee's action against the Small Business Administration and supervisors for violation of the first amendment because, under Schweiker, the remedies provided by the CSRA barred a Bivens action).
 
 
 30
 TVA employees are protected by the CSRA to the extent that they are preference eligible employees. Plaintiff is a preference eligible non-disabled veteran and as such is covered by the CSRA. "Chapter 23 of the CSRA establishes the principles of the merit system of employment, § 2301, and forbids an agency to engage in 'prohibited personnel practices,' including unlawful discrimination, coercion of political activity, nepotism, and reprisal against so-called whistleblowers. § 2302." Fausto, 484 U.S. at 446, 108 S.Ct. at 672. Under the CSRA, as a preference eligible veteran, plaintiff may challenge any demotions or forced transfers he allegedly experienced because of his activities with the NRC. If he prevails, he may be entitled to full back pay, reinstatement and attorneys' fees.
 
 
 31
 Plaintiff is also afforded relief under the ERA. An employee who is retaliated against for filing internal reports concerning violations of nuclear regulatory laws has recourse under the ERA. See Kansas Gas and Electric Co. v. Brock, 780 F.2d 1505 (10th Cir.1985), cert. denied, 478 U.S. 1011, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986); but see Brown and Root, Inc. v. Donovan, 747 F.2d 1029 (5th Cir.1984) (finding that the filing of internal safety reports is not protected activity under the ERA). The fact that plaintiff contends that Congress has denied him coverage for other kinds of personnel actions is not a ground for implying judicial relief, but rather a ground for denying judicial relief. The comprehensive nature of the CSRA indicates that congressional silence on coverage of these personnel actions was not inadvertent. As such, we conclude that the district court properly determined that Bivens remedies are not available to plaintiff.
 
 B.
 
 32
 Plaintiff next argues that the district court erred in dismissing and thereafter denying reconsideration of his § 1985(1) claim for conspiracy to violate plaintiff's civil rights under 42 U.S.C. § 1985(1).
 
 
 33
 Defendants argue that § 1985(1) does not apply to this case and that the district court properly disposed of plaintiff's § 1985 claim. In denying plaintiff's motion for reconsideration, the district court stated that it would not extend § 1985 to federal employer-employee relations for which adequate administrative remedies are available.
 
 
 34
 In reviewing the denial of a motion for reconsideration, we are limited to determining whether the district court abused its discretion in denying the motion. Moreover, we may not consider the merits of the underlying judgment. See Browder v. Director, Dep't of Corrections of Illinois, 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978). Here, we find no abuse of discretion. However, we note the following.
 
 
 35
 In Windsor v. the Tennessean, 726 F.2d 277 (6th Cir.1984), we stated that "civil service employees will not be able to bring suit under § 1985(1) because such employees are relegated to their administrative remedies." Id. at 278. See also Spagnola v. Mathis, 809 F.2d 16, 28-30 (D.C.Cir.1986) (en banc). Plaintiff is a civil service employee, and as such has administrative remedies available under the CSRA. Section 1985(1) was not enacted to develop a forum within the courts whereby dissatisfied federal employees could seek resolution of internal personnel problems. Santistevan v. Loveridge, 732 F.2d 116, 118 (10th Cir.1984).
 
 C.
 
 36
 Plaintiff argues next that the district court erred in dismissing his intentional infliction of emotional distress claim because TVA's actions were outrageous and went beyond the pale of decency.
 
 
 37
 Plaintiff's argument fails for two reasons. First, plaintiff was awarded FECA benefits in July 1990 because work related stresses caused him to be totally disabled, making him incapable of working in his former position at TVA or in a comparable position. Section 3 of the TVA Act of 1933, 16 U.S.C. § 831(b) (1988), specifically extends the benefits of FECA to TVA employees. The remedies provided under FECA are exclusive of all other remedies with respect to an injury or death. See Turner v. Tennessee Valley Authority, 859 F.2d 412 (6th Cir.1988). As 5 U.S.C. § 8116(c) provides:
 
 
 38
 The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmanship compensation statute or under a Federal tort liability statute.
 
 
 39
 5 U.S.C. § 8116(c).
 
 
 40
 The Supreme Court has recognized FECA's exclusivity and has stated that employees are "guaranteed the right to receive immediate, fixed benefits regardless of fault and without need for litigation, but in return, they lose the right to sue the government" and instrumentalities such as TVA. Lockheed Aircraft v. United States, 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983). Thus, once an injury falls within the coverage of FECA, its remedies are exclusive and no other claims can be entertained by the court. See Turner, 859 F.2d at 413; see also DeFord v. Secretary of Labor, 700 F.2d 281, 291 (6th Cir.1983) ("We do not question the principle that DeFord would not be allowed to maintain a civil action under the Federal Tort Claims Act or in tort at common law if the FECA is applicable") (emphasis added) (citations omitted). See, e.g., Heilman v. United States, 731 F.2d 1104, 1111 n. 6 (3rd Cir.1984); Burke v. United States, 644 F.Supp. 566 (E.D.La.1986); Dunn v. United States, 516 F.Supp. 1373 (E.D.Pa.1981). Because plaintiff's injury is covered by FECA, the Court concludes that the remedies afforded by FECA are exclusive, and plaintiff is barred from bringing a suit for the intentional infliction of emotional distress.
 
 
 41
 Even if FECA was not the exclusive statutory remedy, this Court does not believe that the district court erred when it dismissed plaintiff's claim for intentional infliction of emotional distress since TVA's actions were not "outrageous". Under Tennessee law, a claim for intentional infliction of emotional distress must involve outrageous conduct or circumstances. See Medlin v. Allied Investment Co., 217 Tenn. 469, 398 S.W.2d 270 (1966); C.D. Swallows v. Western Electric Co., 543 S.W.2d 581 (Tenn.1976). In Medlin, the Supreme Court of Tennessee recognized the tort of intentional infliction of emotional distress. Chief Justice Burnett, speaking for the court, quoted with approval the Restatement (Second) of Torts, section 46(1):
 
 
 42
 One who by extreme and OUTRAGEOUS conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm results from it, for such bodily harm.
 
 
 43
 (emphasis added).
 
 
 44
 The Tennessee Supreme Court in C.D. Swallows expounded on the definition of "outrageous conduct" when it sustained the dismissal of an action filed for severe physical and emotional harm because the complaint failed to state a claim for which relief could be granted. In affirming, the Supreme Court opined:
 
 
 45
 Liability for the tort of 'outrageous conduct' exists only where (1) the conduct of the defendants has been so outrageous in character, and so extreme in degree, as to be beyond the pale of decency, and to be regarded as atrocious and utterly intolerable in a civilized society, and (2) the conduct results in serious mental injury. Medlin v. Allied, Investment Co., 217 Tenn. 469, 398 S.W.2d 270 (1966). "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities.' " Restatement of Torts (2d), section 46, comment (d), quoted with approval in Medlin, 398 S.W.2d at 274.
 
 
 46
 543 S.W.2d at 582, 583.
 
 
 47
 Considering the evidence in the light most favorable to the plaintiff, it shows that plaintiff's supervisors intimidated him by assigning him to menial tasks, unfairly reprimanded him, gave him low performance appraisal, monitored his communications with the NRC and Congressional investigators, attempted to gain his medical records, and barred him from promotions, bonuses and raises. While such conduct may be tortious, it is not so "outrageous" so as to be beyond the pale of decency. Indeed, tortious conduct is not necessarily synonymous with "outrageous" conduct. For example, Comment (d) of Restatement 46 explicitly provides:
 
 
 48
 It has not been enough that the defendant acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.
 
 
 49
 We believe that the evidence fails to establish a situation so extreme in degree to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. The facts of this case would not lead the average member of the community to exclaim 'outrageous'. Consequently, the trial court was correct in dismissing plaintiff's claim for intentional infliction of emotional distress.
 
 III.
 
 50
 For the above reasons, we AFFIRM the order of the Honorable Leon Jordan, United States District Judge for the Eastern District of Tennessee.
 
 
 
 [1]
 Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (holding that the United States Constitution supports a private cause of action for damages against a federal official)