107 F.3d 872
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Elizabeth M. WOLVERTON, Plaintiff-Appellant,
v.
UNITED STATES of America; Tami J. Hooker; Janice M.
Turner; the Department of Defense; and the
Defense Logistics Agency, Defendants-Appellees.
 No. 96-5224.
 United States Court of Appeals, Sixth Circuit.
 Feb. 26, 1997.
 
 Before: KENNEDY, NELSON, and VAN GRAAFEILAND,* Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from (a) an order substituting the United States as the sole defendant in a civil rights action and (b) a judgment dismissing a subsequently filed amended complaint pursuant to rule 12(b)(6), Fed.R.Civ.P. We shall affirm the order and judgment in all respects.
 
 
 2
 * The plaintiff, Elizabeth M. Wolverton, initially sued defendants Tami J. Hooker and Janice M. Turner in a Tennessee state court, asserting claims for defamation and intentional infliction of emotional distress. The complaint alleged that while an employee of the Defense Logistics Agency ("DLA"), a component of the United States Department of Defense, the plaintiff received a letter from DLA informing her that, subject to a security clearance, she had been tentatively selected for a security assistant position. Before the clearance could be completed, according to the complaint, Ms. Hooker and Ms. Turner made "false verbal statements" about the plaintiff to the man in charge of her clearance investigation, Doye G. Hambrick. The defendants allegedly told Mr. Hambrick that the plaintiff was mentally unstable, that she had threatened to kill her husband, that she had attempted to stab him on one occasion, and that she was taking medication for her mental condition.
 
 
 3
 Some months after the notice of her tentative selection for the security assistant position, the complaint said, Ms. Wolverton received a letter advising that the selection had been withdrawn. She contacted Mr. Hambrick, who attributed the withdrawal to the statements made by Ms. Hooker and Ms. Turner. Ms. Hooker and Ms. Turner allegedly continued to tell Mr. Hambrick that Ms. Wolverton was violent and that they feared for their lives. As a result, Ms. Wolverton was prohibited from entering the office in which the defendants worked.
 
 
 4
 The United States removed the case to federal court pursuant to the Westfall Act, a statute that provides for removal of state court actions against federal employees upon certification by the Attorney General that the "employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(2). Such a certification, the act provides, "shall conclusively establish scope of office or employment for purposes of removal." Id.
 
 
 5
 After the removal the government moved to substitute the United States as the sole defendant pursuant to 28 U.S.C. § 2679(d)(1), a section that provides for substitution upon certification by the Attorney General. The government then moved to dismiss the complaint. The district court delayed disposition of this motion to allow the plaintiff to file an amended complaint. She did so on June 15, 1995.
 
 
 6
 The amended complaint named as defendants the United States, the Department of Defense, DLA, and Mr. Hambrick, in addition to Ms. Hooker and Ms. Turner. (Mr. Hambrick was subsequently dismissed voluntarily.) The amended complaint asserted that the actions of the defendants deprived Ms. Wolverton of her liberty without due process of law, in violation of the Fifth and Fourteenth Amendments to the Constitution. Ms. Wolverton sought declaratory and injunctive relief, plus compensatory and punitive damages totaling $6 million.
 
 
 7
 The defendants moved to dismiss the amended complaint for failure to state a claim upon which relief could be granted. The district court granted the motion, explaining its reasons in an 11-page order and dismissing the action in a judgment entered on January 24, 1996. The plaintiff filed her notice of appeal on February 5, 1996.
 
 II
 
 8
 The plaintiff contends that the "district court erred when it substituted the United States of America as the sole defendant ... without first making a determination under the Tennessee law of respondeat superior that [defendants Hooker and Turner] acted in the scope of their employment." We do not find the contention persuasive.
 
 
 9
 The Westfall Act says that "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States ... and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). Unlike a certification for removal under § 2679(d)(2), a certification for substitution under § 2679(d)(1) is not automatically conclusive. Gutierrez de Martinez v. Lamagno, 115 S.Ct. 2227, 2236 (1995). Rather, "[t]he Attorney General's certification provides prima facie evidence that the employee was acting within the scope of employment." RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1143 (6th Cir.1996). In the absence of a proper challenge, of course, the evidence provided by the Attorney General's certification under § 2679(d)(1) will be dispositive. Billings v. United States, 57 F.3d 797, 799 (9th Cir.1995).
 
 
 10
 Ms. Wolverton did not present a proper challenge to the merits of the certification here. Although she filed a memorandum in opposition to the government's motion to substitute, she relied primarily on the government's alleged violation of a local procedural rule. And she expressly stated that should the district court choose to "bypass the mandates of Local Rule 11, Plaintiff has no dispute with the USA being added as a party defendant."
 
 
 11
 The plaintiff did ask the district court to "retain the named Defendants in their individual capacities for any acts done outside the scope of their employment." She asserted in conclusory fashion that it was "inconceivable that the USA would condone the conduct of the named Defendants and argue that said conduct was done in the scope of their employment." Ms. Wolverton pointed to no specific facts demonstrating that the actions taken by the defendants were outside the scope of their employment, however, and the district court therefore acted properly in accepting the Attorney General's certification. An employee may obviously engage in improper conduct--conduct in no way condoned by his employer--that is still within the scope of his employment. See Arbour v. Jenkins, 903 F.2d 416, 422 (6th Cir.1990).
 
 III
 
 12
 The plaintiff also contends that "the district court erred when it ruled that the Civil Service Reform Act barred a Bivens action brought against Ms. Hooker and Ms. Turner who did not hold supervisory/managerial authority over Ms. Wolverton." Relying primarily on this court's decision in Jones v. Tennessee Valley Authority, 948 F.2d 258 (6th Cir.1991), the district court held that there is no implied cause of action here under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), because the Civil Service Reform Act ("CSRA") provides a comprehensive statutory remedy for constitutional violations occurring in the context of federal personnel decisions. The district court's analysis was correct, we believe.
 
 
 13
 Jones held that the CSRA precluded a Bivens claim where the plaintiff, an employee of the Tennessee Valley Authority, sued TVA and various officers and employees of the agency for allegedly damaging his professional reputation in violation of the First and Fifth Amendments. The court noted that a cause of action against federal employees for constitutional violations will not be implied "if the defendant shows ... 'special factors [counselling] hesitation in the absence of affirmative action by Congress,' ... or that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the constitution and viewed as equally effective." Jones, 948 F.2d at 262 (quoting Bivens, 403 U.S. at 396).
 
 
 14
 "[S]pecial factors" counselling hesitation have been found "where the design of a government program suggests that Congress provided what it considered adequate remedial mechanisms for constitutional violations that may occur in the course of its administration." Jones, 948 F.2d at 263. The CSRA is just such a program, Jones held, because the statute creates a "comprehensive administrate scheme" governing "federal personnel policy;" this suggests that "Congress has provided what it considers to be adequate remedies for constitutional violations." Id. at 263-64. The CSRA thus provided the plaintiff's exclusive avenue for redress of any constitutional violations "in the field of federal employment, even if no remedy at all has been provided by the CSRA." Id. at 264.
 
 
 15
 Jones governs the case at bar, we believe, notwithstanding the fact that the defendants are not the plaintiff's supervisors. We reach this conclusion for two reasons.
 
 
 16
 First, it appears that the CSRA does provide redress for claims against co-workers. The plaintiff alleges that the defendants made intentional and maliciously false statements to an investigator in connection with a possible promotion. The CSRA provides remedies for "prohibited personnel practices" in various "personnel actions," including "appointments" and "promotions." 5 U.S.C. § 2302(a)(2). A "prohibited personnel practice" can be committed by "[a]ny employee who has authority to take, direct others to take, recommend, or approve any personnel action." 5 U.S.C. § 2302(b) (emphasis supplied). Such an employee shall not "willfully obstruct any person with respect to such person's right to compete for employment," or "take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing or directly concerning, the merit system principles contained in section 2301 of this title." 5 U.S.C. § 2302(b)(4) & (11). One such "merit system principle" is that "[a]ll employees and applications should receive fair and equitable treatment in all aspects of personnel management ... with proper regard for their privacy and constitutional rights." 5 U.S.C. § 2301(b)(2). And employee advancement "should be determined solely on the basis of relative ability, knowledge, and skills...." 5 U.S.C. § 2301(b)(1). If the plaintiff's allegations are true, there was a violation of these principles--and the plaintiff could have requested an investigation by the Office of Special Counsel, who could have requested corrective action by the Merit Systems Protection Board. See 5 U.S.C. §§ 1212(a)(2), 1214(a)(1)(A), and 1214(b)(1)(A)(i).
 
 
 17
 Second, even assuming the CSRA provides no remedy for the plaintiff's claims against her co-workers, "[t]he absence of statutory relief for a constitutional violation ... does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." Schweiker v. Chilicky, 487 U.S. 412, 421-22 (1988). In other words, "the 'special factors' analysis does not require a foray into the meaningfulness of federal employees' remedies under the CSRA.... The focus is on the comprehensive nature of the administrative system protecting the rights of the plaintiff, as well as Congress' expertise and authority in the field in question." Jones, 948 F.2d at 264. Congress has created just such a comprehensive administrative system for remedying constitutional violations occurring in the context of federal employment decisions. Thus, "even if no remedy at all has been provided by the CSRA, courts will not create a Bivens remedy." Id.
 
 IV
 
 18
 The plaintiff also contends that the district court erred in holding that her claims against the government for declaratory and injunctive relief are equivalent to "constitutional torts" claims, which may not be asserted against the government. We find no error in this regard.
 
 
 19
 In Shaner v. United States, 976 F.2d 990, 994 (6th Cir.1992), cert. denied, 507 U.S. 1051 (1993), the plaintiff sought damages from the United States for what was claimed to be an unconstitutional taking of property. We viewed the case as a Bivens action, and we held that "[a] Bivens action may be brought only against individual federal officials, not against the United States." Id. at 994.
 
 
 20
 Shaner rested not on the nature of the relief requested, but on the principle that--as we said in Ashbrook v. Block, 917 F.2d 918, 924 (6th Cir.1990)--a "Bivens claim against the United States is barred by sovereign immunity." Ashbrook v. Block, 917 F.2d 918, 924 (6th Cir.1990). Sovereign immunity "acts as a bar to suit against the United States unless there has been an explicit waiver by the government." Nuclear Transp. & Storage, Inc. v. United States, 890 F.2d 1348, 1351 (6th Cir.1989), cert. denied, 494 U.S. 1079 (1990). This "jurisdictional bar operates when a suit threatens to impose upon the United States liability for money or property damages or some form of coercive injunctive relief." United States v. Rural Elec. Convenience Coop. Co., 922 F.2d 429, 434 (7th Cir.1991) (emphasis added).
 
 
 21
 Accordingly, and for substantially all of the reasons given by the district court, the order and judgment appealed from are AFFIRMED.
 
 
 
 *
 The Honorable Ellsworth A. Van Graafeiland, United States Circuit Judge for the Second Circuit, sitting by designation